## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Katherine Bradacs and Tracie Goodwin, | ) | Civil Action No. 3:13-cv-02351-JMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Nimrata ("Nikki") Randhawa Haley, in her | ) | |
| official capacity as Governor of South | ) | |
| Carolina; Alan M. Wilson, in his official | ) | |
| Capacity as Attorney General, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————————— | ) | |

Plaintiffs Katherine Bradacs ("Bradacs") and Tracie Goodwin ("Goodwin") (collectively "Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Nimrata Randhawa Haley[1], in her official capacity as Governor of South Carolina; and Alan M. Wilson (individually "Defendant"), in his official capacity as Attorney General, seeking "to challenge the constitutionality of South Carolina's laws and constitutional provisions that deny legal recognition in South Carolina to the marriages of same-sex couples who are married in one of the many states and numerous foreign countries where same-sex marriages are legal." (ECF No. 41 at 1 ¶ 1 (citing S.C. Const. art. XVII, § 15; S.C. Code § 20-1-15 (1976)).)

This matter is before the court on Plaintiffs' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 75.) Defendant opposes Plaintiffs' Motion for Summary Judgment asserting that the decision of the United States Court of Appeals for the Fourth Circuit in Bostic v. Schaefer, 760 F.3d 352 (4th Cir. 2014), which invalidated a Virginia statute and constitutional amendment banning same-sex marriage, was wrongly decided, and therefore this court should

---

[1] In an Order filed on November 10, 2014, this court found that suit against Governor Haley was barred by the Eleventh Amendment. (See ECF No. 89.)

decline to follow it.  (ECF No. 79.)  For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Summary Judgment.

## I.     RELEVANT BACKGROUND TO THE PENDING MOTION

Plaintiffs, who are both female, were married in the District of Columbia on April 6, 2012.  (ECF No. 41-1.)   Despite that their marriage is legally recognized by the federal government pursuant to the United States Supreme Court's decision in United States v. Windsor, ___ U.S. ___, 133 S. Ct. 2675 (2013), Plaintiffs' marriage is not recognized in the State of South Carolina.  As a result, Plaintiffs filed a Verified Complaint for Declaratory, Injunctive, and Other Relief on August 28, 2013, seeking relief for claims based on 42 U.S.C. § 1983 for violations of due process, claims based on 42 U.S.C. § 1983 for violations of equal protection under the United States Constitution on the basis of sexual orientation and on the basis of sex,  and claims based on 42 U.S.C. § 1983 for violations of due process and equal protection by failing to honor the Full Faith and Credit Clause of the United States Constitution, all in violation of the Fourteenth Amendment to the United States Constitution.  (ECF No. 1.)  Plaintiffs seek a declaratory judgment that the South Carolina statutes and constitutional provisions disallowing the recognition of their same-sex marriage violate their rights to due process and equal protection under the laws, a preliminary and permanent injunction against Defendants and others enforcing the application of these allegedly illegal laws and directing the State of South Carolina to recognize Plaintiffs' marriage and those marriages validly entered into by other same-sex couples outside of the State of South Carolina.  (Id.)

Defendants filed their Answer on November 14, 2013.  (ECF No. 29.)  In their Answer, Defendants deny that Plaintiffs' suit has any legal merit or that Plaintiffs are entitled to any relief or that same-sex marriage is a fundamental right.  Defendants further assert that Plaintiffs lack

standing to raise any claims on behalf of themselves or as to other same-sex couples, that the State of South Carolina is not required to give recognition of same-sex marriages from other jurisdictions and that such recognition would be contrary to the Tenth Amendment and the sovereign interests of the State, and that Defendants are entitled to Eleventh Amendment Immunity.  (Id.)

On January 23, 2014, Plaintiffs filed a Motion to Amend the Complaint to add an additional cause of action regarding due process and equal protection under the Constitution of South Carolina.   (ECF No. 37.)   In their Verified Amended Complaint for Declaratory, Injunctive, and Other Relief, Plaintiffs also requested that the court enjoin Defendants from denying Plaintiffs and all other same-sex couples the right to marry.   (ECF No. 37-1.) Defendants consented to the motion.   (ECF No. 38.)   Thereafter, Plaintiffs filed a Verified Amended Complaint for Declaratory, Injunctive, and Other Relief on February 21, 2014.  (ECF No. 41.)  Defendants filed an Answer to the Amended Complaint on March 14, 2014, asserting essentially the same or similar defenses as stated in the Answer to the original Complaint. (ECF No. 45.)

On April 3, 2014, Defendants filed a Motion to Stay and Hold Cross-Motions Deadline in Abeyance in which they requested that the court stay the proceedings in this case until the United States Court of Appeals for the Fourth Circuit issued its final opinion in the appeal of the same-sex marriage decision of the United States District Court for the Eastern District of Virginia in Bostic v. Rainey, 970 F. Supp. 2d 456 (E.D. Va. Feb. 13, 2014).  (ECF No. 47.)  The court granted Defendants' Motion to Stay on April 22, 2014.  (ECF No. 54.)  The Fourth Circuit issued its ruling in the Bostic case on July 28, 2014.  Bostic v. Schaefer, 760 F.3d 352 (4th Cir. 2014). Thereafter, on October 6, 2014, the United States Supreme Court denied certiorari in the

companion matters of <u>Rainey v. Bostic</u>, 135 S. Ct. 286 (2014), <u>Schaefer v. Bostic</u>, 135 S. Ct. 308 (2014), and <u>McQuigg v. Bostic</u>, 135 S. Ct. 314 (2014).  By denying certiorari in these cases, the Supreme Court, in effect, did not overturn the ruling of the United States Court of Appeals for the Fourth Circuit in <u>Bostic v. Schaefer</u>, 760 F.3d 352 (4th Cir. 2014).  In <u>Bostic</u>, the Fourth Circuit held that marriage laws prohibiting legal recognition of same-sex relationships in Virginia "violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the extent that they prevent same-sex couples from marrying and prohibit Virginia from recognizing same-sex couples' lawful out-of-state marriages."  <u>Id.</u> at 384.  On October 7, 2014, the court <u>sua sponte</u> lifted the stay in this case and directed the parties to submit a proposed Amended Scheduling Order and/or Briefing Schedule to the court by October 15, 2014.  (ECF No. 70.)  The parties consented to a Scheduling Order which required that the dispositive motions in this case be filed by October 23, 2014, with responses and replies to follow thereafter in accordance with the scheduling order.  (ECF No. 71.)

On October 20, 2014, Plaintiffs filed a Motion for Summary Judgment requesting that the court declare as unconstitutional the South Carolina statutes and constitutional provisions precluding persons from entering same-sex marriages or having their out-of-state valid same-sex marriages recognized in South Carolina and enter judgment in their favor.  (ECF No. 75.)  On October 23, 2014, Defendants filed a Motion for Judgment on the Pleadings arguing that this action is barred by federalism and the Eleventh Amendment, and that Plaintiffs lack standing to sue Defendants.  (ECF No. 78.)  Defendants further filed a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on October 28, 2014.  (ECF No. 79.)  On October 31, 2014, Plaintiffs filed a Response to Defendants' Motion for Judgment on the Pleadings, to which Defendants filed a Reply to Return to Defendants' Motion for Judgment on the Pleadings on

November 4, 2014.  (ECF Nos. 82, 85.)

Although Plaintiffs filed their Motion for Summary Judgment first in this case, the court found it more prudent to rule first on Defendants' Motion for Judgment on the Pleadings since such a motion is based solely on the pleadings.  On November 10, 2014, this court issued an Order and Opinion (the "November Order") granting in part and denying in part Defendants' Motion for Judgment on the Pleadings.  (ECF No. 89.)  In the November Order, this court found that Plaintiffs have standing to bring this suit seeking legal recognition of their same-sex marriage in the State of South Carolina, but did not find that Plaintiffs have sufficiently established standing to seek relief regarding the application and issuance of marriage licenses to same-sex couples in South Carolina.  (Id. at 11–13.)  The court barred the suit as to Governor Haley under the Eleventh Amendment and dismissed her from the suit, but found that Defendant falls under the Ex parte Young exception to Eleventh Amendment immunity and is not shielded by immunity in this action.  (Id. at 16–20.)  The court further found that Plaintiffs had sufficiently stated plausible allegations of constitutional violations, and thus their claim survives a Motion for Judgment on the Pleadings.  (Id. at 13–15.)

Plaintiffs filed a Reply to Defendants' Return to Plaintiffs' Motion for Summary Judgment on November 10, 2014.  (ECF No. 88.)  Also on November 10, 2014, Defendant filed a Motion to Stay pursuant to Fed. R. Civ. P. 62, requesting that the court grant a stay pending appeal to the United States Court of Appeals for the Fourth Circuit should the court decide to grant summary judgment to Plaintiffs.[2]  (ECF No. 91.)

---

[2] In addition, Don Boyd filed a pro se Motion to Intervene as Party in Interest on November 3, 2014.  (ECF No. 83.)  Boyd asserts that "any ruling ratifying gay 'marriage' would compel [Boyd] to leave off worshipping The LORD with music and psalms—free exercise of my religion—to assume a life of a protester and wedding crasher."  (ECF No. 83-1 at 5 (emphasis in original).)  The court denied Boyd's Motion to Intervene on November 18, 2014.  (ECF No. 95.)

On November 12, 2014, the Honorable Richard M. Gergel, United States District Judge for the District of South Carolina, Charleston Division, issued an order in the case of <u>Condon v. Haley</u>, finding that "S.C. Code Ann. § 20-1-10(B)–(C), S.C. Code Ann. § 20-1-15 and S.C. Constitution art. XVII, § 15, to the extent they seek to prohibit the marriage of same sex couples who otherwise meet all other requirements for marriage in South Carolina, unconstitutionally infringe on the rights of Plaintiffs under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and are invalid as a matter of law." <u>Condon v. Wilson</u>, Civil Action No. 2:14-4010-RMG, 2014 WL 5897175, at *11 (D.S.C. Nov. 12, 2014).  In the <u>Condon</u> order, Judge Gergel also issued a permanent injunction, enjoining Defendant and Charleston County Probate Judge Irvin G. Condon and "their officers, agents, servants and employees" from enforcing the provisions, from "[i]nterfering in any manner with Plaintiffs' fundamental right to marry or in the issuance of a marriage license to Plaintiffs," and from "[r]efusing to issue Plaintiffs a marriage license if, but for their sex, they are otherwise qualified to marry under the laws of South Carolina."  <u>Id.</u>

## II.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law . . . [a]nd this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom."  <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d

---

On November 5, 2014, the Lawyers' Committee for Children's Rights submitted an <u>amicus curiae</u> brief "on the discriminatory impact of South Carolina's ban on same-sex marriage on children in those relationships."  (ECF No. 86 at 1.)

390, 394 (4th Cir. 1950) (internal citations omitted).  "[T]he fact that there exists an important, difficult or complicated question of law is not a bar to a summary judgment where it is clear there is no genuine issue of a material fact."  Lewis v. Coleman, 257 F. Supp. 38, 40 (D.C. W. Va. 1966).  "Resolution of the legal issues will not be rendered easier by going through the trial when there is no issue of fact to be tried."  Id. (citation omitted).  In this regard, summary judgment is appropriate when the parties merely "dispute the significance of the events . . . but do not dispute which events actually occurred."  Transamerica Delaval Inc. v. Citibank, N.A., 545 F. Supp. 200, 203 (D.C.N.Y. 1982) (internal citation omitted).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must demonstrate a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

### III.    ANALYSIS

A.    Standing

In the November Order, the court found that the facts as alleged in the pleadings indicated that "Plaintiffs have standing to bring this action seeking legal recognition of their same-sex marriage in the State of South Carolina."  (ECF No. 89 at 13.)

Standing is an essential component of a justiciable "case" under Article III.  Steel Co. v.

<u>Citizens for a Better Env't</u>, 523 U.S. 83, 102 (1998). To establish standing, Plaintiffs must show: (1) that they "suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical,'"; (2) "a causal connection between the injury and the conduct complained of– the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'"; and (3) that it is "'likely', as opposed to merely 'speculative', that the injury will be 'redressed by a favorable decision.'" <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992) (internal citations omitted).

In moving for summary judgment, Plaintiffs argue that they have incurred the following direct injuries because their same-sex marriage is not recognized in South Carolina:

> Neither can nominate the other as a spouse on her health or dental insurance policy through the State of South Carolina, although they have attempted to do so; up until well after the filing of this lawsuit, Bradacs could not nominate her biological children on her health or dental insurance policy through the State of South Carolina, resulting in both children being placed on Medicaid; neither Plaintiff can claim "married" as an exemption on their State of South Carolina tax return, causing each Plaintiff the burden and expense of filing separate State tax returns; until two weeks ago, Goodwin was unable to claim Bradacs as her spouse or Bradacs's son, J, as her step-son, for VA disability purposes, which caused a loss of additional VA disability income, including VA subsistence for school (benefits were not made retroactive to the date of their marriage); Bradacs was unable to claim the Family Medical Leave Act (FMLA) as a means to take leave from her employment to provide assistance to her spouse, Goodwin, after Goodwin's hand surgery; Bradacs was required to obtain a physician's statement proving she was the biological mother of B and C during Goodwin's delivery of the children, and only then was Bradacs able to take leave from her employment under the FMLA in order to attend her children's births; all of the Plaintiffs' minor children are under a cloud of social stigma by virtue of the State of South Carolina refusing to recognize Plaintiffs as a wedded couple or a legally recognized family unit; Bradacs cannot be added to the birth certificates for B and C as their biological mother without first obtaining a decree of adoption of her own children; Bradacs was not authorized to make medical care decisions on behalf of her infant son, B, who was born with a life-threatening medical condition because Bradacs was not listed on the child's birth certificate; Bradacs was required to provide written proof that she was the biological mother of her twin children in order to be present at their births (Exhibit 5); Bradacs is unable to

nominate Goodwin as a spouse on her Police Officer Retirement Systems beneficiary designation form, and as a result, Goodwin cannot receive 100% of Bradacs's monthly survivor annuity benefit upon her untimely death; Goodwin cannot nominate Bradacs as a spouse on her state retirement beneficiary designation form so that Bradacs will receive a reduced amount of Goodwin's retirement benefit or survivor benefits; because Bradacs is not recognized as Goodwin's spouse under the Veterans Administration loan regulations, she is required to provide a "gift letter" for any contributions toward the parties' home purchase and payments to avoid tax implications; because Bradacs is not listed on B's or C's birth certificates, she is required to obtain a decree of adoption or legal guardianship order over both children in order to obtain their school, medical, and related records; Goodwin cannot change her name to "Bradacs" without a court order.

Neither Plaintiff can make medical care decisions for the other, or discuss medical issues with either Plaintiff's healthcare providers without a healthcare power of attorney; neither Plaintiff can claim Social Security benefits from the other due to the other's untimely passing; Plaintiffs are denied the protections of the South Carolina Family Court system, particularly in setting child support, alimony or other support, division of assets, and otherwise maintaining the status quo pending any separation of the Plaintiffs; Plaintiffs face uncertainty as to who may receive priority for custody of their two children upon either Plaintiff's untimely passing or their separation should family members file petitions for custody of the minor children; Plaintiffs will be required to endure the hardship and impracticality of going to the District of Columbia or to some other jurisdiction, meet that jurisdiction's residency requirement, and then seek and obtain a judgment for divorce; Bradacs's biological children are unable to receive her line of duty death benefits without Bradacs obtaining a decree of adoption over her own biological children; neither Plaintiff is able to receive her intestate share of the other's probate estate as a surviving spouse should either Plaintiff pass away without a will; there is uncertainty over whether Bradacs may claim survivor benefits through the VA.

(ECF No. 75-1 at 7–9 (referencing ECF Nos. 75-5 and 75-6).)  Upon review of the foregoing, the court finds that Plaintiffs have sufficiently established suffering an injury in fact.

Additionally, the court finds that Plaintiffs have sufficiently established that their injury in fact is traceable to actions taken by Defendant with respect to recognition of same-sex marriages in South Carolina.  Defendant has specifically acted to stop the issuance of marriage licenses to same-sex couples in the wake of the Bostic decision.  See State of South Carolina ex rel. Wilson v. Condon, Petition for Original Jurisdiction and Motion for Temporary Injunction,

filed Oct. 8, 2014, available at http://www.judicial.state.sc.us/whatsnew/displaywhatsnew.cfm?

indexID=980 (last visited Nov. 18, 2014).  Moreover, after Judge Gergel entered the <u>Condon</u>

decision, Defendant filed an immediate notice of appeal and released a statement saying:

> Today's ruling comes as no surprise and does not change the constitutional obligation of this Office to defend South Carolina law, including, but not necessarily limited to, appeal to the Fourth Circuit. Therefore, we will immediately appeal to the Fourth Circuit.

> Also, the Sixth Circuit Court of Appeals recently upheld traditional marriage. Therefore, we have opposing rulings between federal circuits, which means it is much more likely that the U.S. Supreme Court could resolve the matter at the national level.  We believe this office has an obligation to defend state law as long as we have a viable path to do so.

> "Finally, our state's laws on marriage are not identical to those in other states. Therefore, based on the time-honored tradition of federalism, this Office believes South Carolina's unique laws should have their day in court at the highest appropriate level.

Charleston City Paper, available at http://www.charlestoncitypaper.com/TheBattery/archives/

2014/11/12/yep-alan-wilson-is-still-defending-the-gay-marriage-ban (last visited Nov. 18, 2014).

He further filed a motion in this case requesting "that any order of this Court granting Plaintiffs

relief be stayed until appellate review is completed at the Court of Appeals or that, alternatively,

this Court's order be stayed until such time as the Defendant can obtain a ruling from the Court

of Appeals on a motion made in that Court to stay a summary judgment ruling."  (ECF No. 91 at

3.)  Therefore, the court finds that Defendant has directly contributed to Plaintiffs' injury and/or

that at least part of their injury is traceable to Defendant.  <u>Cf.</u> <u>Bostic</u>, 760 F.3d at 370–71 ("The

Plaintiffs' claims can therefore survive Schaefer's standing challenge as long as one couple

satisfies the standing requirements with respect to each defendant.")

     Finally, should the court grant Plaintiffs' Motion for Summary Judgment, an injunction

requiring South Carolina to recognize the marriage validly entered into by Plaintiffs would

redress their injuries by allowing them to gain access to the benefits they are currently denied.

Based on the foregoing, the court finds that Plaintiffs have satisfied all three (3) components of the Lujan standard.  Therefore, the court concludes that Plaintiffs have asserted a legally cognizable injury, redressable by suing Defendant.  Accordingly, Plaintiffs have standing to bring this action seeking legal recognition of their same-sex marriage in the State of South Carolina.[3]

B.     Eleventh Amendment Immunity

In the November Order, the court determined that the pleadings supported allowing the action to continue against Defendant pursuant to the exception to Eleventh Amendment immunity under Ex parte Young, 209 U.S. 123 (1908).

The Eleventh Amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. Const. amend. XI.  Though not explicitly stated in the language of the amendment, courts have long held that this guarantee also protects a state from federal suits brought by its own citizens, not only from suits by citizens of other states.  Hans. v. Louisiana, 134 U.S. 1 (1890); Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  However, under Ex parte Young, an exception to Eleventh Amendment immunity exists wherein a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment."  McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) (citing Ex parte Young, 209 U.S. at 159–60).  "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly

---

[3] The court reiterates its finding that Plaintiffs do not have standing to seek relief regarding the application and issuance of marriage licenses to same-sex couples in South Carolina.

unconstitutional state law is threatened, even if the threat is not yet imminent." Id. (citing Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 330 (4th Cir. 2001)).  Moreover, the plaintiff bears the "burden of showing that he has standing for each type of relief sought" and, thus, for injunctive relief he must allege that "he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000)).

The Ex parte Young exception is directed at "officers of the state, [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." Ex parte Young, 209 U.S. at 155–56.  Thus, a defendant must have "some connection with the enforcement of the act" or "special relation" to the challenged state action in order to properly be a party to the suit.  Lytle v. Griffith, 240 F.3d 404, 409 (4th Cir. 2001) (quoting Ex parte Young, 209 U.S. at 157); McBurney, 616 F.3d at 399.  This requirement of "proximity to and responsibility for the challenged state action," S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 333 (4th Cir. 2008), is not met when an official merely possesses "[g]eneral authority to enforce the laws of the state." Gilmore, 252 F.3d at 331 (citation omitted).  "This 'special relation' requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials." Limehouse, 549 F.3d at 332–33 (citing Ex parte Young, 209 U.S. at 158–59).

As referenced above, Defendant clearly falls within the Ex parte Young exception.

Defendant has vigorously enforced the state law provisions at issue in this litigation and continues "to challenge efforts by Plaintiffs to vindicate their claimed fundamental right to marry under the United States Constitution."  See, e.g., Condon, 2014 WL 5897175, at *3.  Therefore, the court finds that Defendant is not shielded by the Eleventh Amendment in this case.

C.      Federalism

Defendant urges the court to not consider Plaintiffs' claims pursuant to "overriding principles of federalism," noting "the federal courts, as a general rule, do not adjudicate marital status even where there might otherwise be a basis for federal jurisdiction."  (ECF No. 79 at 2 (quoting Windsor, 133 S. Ct. at 2691).)  Defendant asserts that "[t]he state courts may—and are required to—hear such challenges" as this case and asserts "deference to the courts of South Carolina in this important area of domestic relations does not mean that the state courts will not consider or adjudicate the important constitutional claims raised by this case.  To the contrary, our South Carolina courts will certainly do so."  (ECF No. 78-1 at 8–9.)  This argument falls flat when noting that two (2) weeks prior to Defendant making this argument in his Motion for Judgment on the Pleadings, the Supreme Court of South Carolina deferred to this court's decision in this case in its response to Defendant's Petition for Original Jurisdiction and Motion for Temporary Injunction requesting the state Supreme Court enjoin the issuance of marriage licenses to same-sex couples in the wake of the United States Supreme Court's refusal to hear the Bostic case.  See State of South Carolina ex rel. Wilson v. Condon, Order filed Oct. 9, 2014, available at http://www.judicial.state.sc.us/whatsnew/displaywhatsnew.cfm?indexID=981 (last visited Nov. 17, 2014) ("Respondent and all other probate judges are hereby directed not to issue marriage licenses to same-sex couples pending a decision by the Federal District Court in Bradacs.  Further, unless otherwise ordered by this court, the issue of the constitutionality of the

foregoing state law provisions shall not be considered by any court in the South Carolina Unified Judicial System while that issue remains pending before the Federal District Court.").

Further, although it is the general rule that laws concerning marriage are traditionally the purview of the state, rather than federal courts, even the most widely accepted and deeply rooted rules have exceptions.  As the Supreme Court noted in Loving v. Virginia, 388 U.S. 1 (1967), when addressing the state's argument that federalism precluded the court from ruling on Virginia's laws barring interracial marriage, "the State does not contend in its argument before this court that its powers to regulate marriage are unlimited notwithstanding the commands of the Fourteenth Amendment.  Nor could it do so."  Id. at 7.

D.    Full Faith and Credit

Plaintiffs assert that they are entitled to summary judgment because the Full Faith and Credit Clause of the United States Constitution requires South Carolina to legally recognize marriages of same-sex couples who were married in other states or jurisdictions.  (ECF No. 75-1 at 24 ("South Carolina's refusal to recognize a marriage that is valid in more than half the states is a denial of . . . the mandates of the full faith and credit clause.").)  Defendant opposes summary judgment arguing, among other things, that the Full Faith and Credit Clause is inapplicable to claims against state officials and the marriage license issued to Plaintiffs by the District of Columbia "is not a judgment to which this clause applies."  (ECF No. 79 at 5; ECF No. 78-1 at 37–44.)

The Full Faith and Credit Clause provides that "[f]ull faith and credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State . . . [a]nd the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effects thereof."  U.S. Const. art. IV, § 1.  The Full Faith

and Credit Clause imposes a duty on state courts to give a sister-state judgment the same effect that the issuing court would give it.  Thompson v. Thompson, 484 U.S. 174, 180 (1988) ("[T]he Full Faith and Credit Clause obliges States only to accord the same force to judgments as would be accorded by the courts of the State in which the judgment was entered."); see also Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 525 (1986).  A state satisfies its constitutional obligation of Full Faith and Credit where it affords a sister-state judgment "the same credit, validity, and effect" in its own courts, "which it had in the state where it was pronounced." Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 704 (1982) (quoting Hampton v. McConnel, 16 U.S. (3 Wheat.) 234, 235 (1818)).

In considering the applicability of the Full Faith and Credit Clause to the recognition in South Carolina of Plaintiffs' same-sex marriage, the court is constrained by the Supreme Court's acknowledgment in Windsor that Section 2 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, 28 U.S.C. § 1738C, was not at issue in the case.  Windsor, 133 S. Ct at 2682–83.  Section 2 of DOMA provides that "[n]o State . . . shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State . . . arising from such relationship."  28 U.S.C. § 1738C.  Section 2 specifically permits states to refuse to give full faith and credit to same-sex marriages performed in another state.  See, e.g., Windsor, 133 S. Ct. at 2682–83 ("Section 2, which has not been challenged here, allows States to refuse to recognize same-sex marriages performed under the laws of other States."); Smelt v. Cnty. of Orange, 447 F.3d 673, 683 (9th Cir. 2006) (explaining that "Section 2, in effect, indicates that no state is required to give full faith and credit to another states' determination that 'a relationship between persons of the same sex . . . is treated as a marriage'"); Gill v. Office of Personnel Mgmt., 699 F.

Supp. 2d 374, 378 (D. Mass. 2010) ("In enacting Section 2 of DOMA, Congress permitted the states to decline to give effect to the laws of other states respecting same-sex marriage.") (footnote omitted).   Section 2 of DOMA has been interpreted as an example of Congress exercising its powers under the Full Faith and Credit Clause to "prescribe the Manner in which such Acts, Records, and Proceedings" of one state shall be given Full Faith and Credit in every other state.  Wilson v. Ake, 354 F. Supp. 2d 1298, 1303 (M.D. Fla. 2005) (citing U.S. Const. art. IV, § 1; 28 U.S.C. § 1738C).  Accordingly, after Windsor, Section 2 of DOMA appears to still be an appropriate exercise of Congressional power to regulate conflicts between the laws of two different States, in this case, conflicts over the validity of same-sex marriages.  Id.  This conclusion is apparent notwithstanding the Fourth Circuit's opinion in Bostic.

In Bostic, two (2) same-sex couples challenged Virginia's same-sex marriage ban. Bostic, 760 F.3d at 367.  Same-sex couple Timothy Bostic and Tony C. London desired "to marry each other under the laws of the Commonwealth in order to publicly announce their commitment to one another and to enjoy the rights, privileges, and protections that the State confers on married couples."  Id. at 368.  Same-sex couple Carol Schall and Mary Townley, like Plaintiffs in this case, were seeking legal recognition by Virginia of their same-sex marriage since they had been "lawfully married in California in 2008."  Id.  In holding that marriage is a fundamental right and that "the fundamental right to marry encompasses the right to same-sex marriage," id. at 376, the Fourth Circuit concluded that Virginia's marriage laws "violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the extent that they prevent same-sex couples from marrying."  Id. at 384.  However, the Fourth Circuit did not make any findings, failed to reach any conclusions, or provide any guidance whatsoever regarding the applicability of the Full Faith and Credit Clause to these same unconstitutional marriage laws.

In light of the foregoing, the court must deny Plaintiffs' motion for summary judgment pursuant to the restrictions placed on Full Faith and Credit by Section 2 of DOMA. However, this decision is ultimately rendered meaningless when considered in the context of the court's findings below regarding the applicability of Bostic and Condon to Plaintiffs' claims that South Carolina's marriage recognition ban denies them equal protection and due process. In this regard, Section 2 of DOMA is not a complete barrier to Plaintiff's remaining claims because whatever powers Congress may have under the Full Faith and Credit Clause, "Congress does not have the power to authorize the individual States to violate the Equal Protection Clause." Graham v. Richardson, 403 U.S. 365, 382 (1971).

E.    Baker, Windsor, and Bostic

In opposing Plaintiffs' Motion for Summary Judgment, Defendant urges the court to follow Baker v. Nelson, 409 U.S. 810 (1972)[4], asserting it is "still the law of the land" and as such this court is "required to follow the Supreme Court's summary disposition in Baker." (ECF No. 79 at 2.) Although Baker speaks to the issues presented in this case, there is good reason to find its guidance no longer binding. Due process and equal protection jurisprudence has developed significantly after Baker, and the Supreme Court in Windsor "dramatically changed tone with regard to laws that withhold marriage benefits from same-sex couples." Latta v. Otter, Case No. 1:13-cv-00482-CWD, 2014 WL 1909999, at *8 (D. Idaho May 13, 2014). In this regard, "every court to consider Baker in the context of a post-Windsor challenge to laws against

---

[4] Baker was an appeal to the United States Supreme Court from a decision of the Supreme Court of Minnesota. The Minnesota Supreme Court held that neither Minnesota law nor the United States Constitution required the issuance of marriage licenses to a same-sex couple. Baker v. Nelson, 191 N.W.2d 185, 187 (Minn. 1971). Based on a brief review of then-existing due process and equal protection jurisprudence, the Minnesota court rejected the plaintiffs' due process and equal protection claims. Id. at 187. On appeal, the Supreme Court summarily dismissed the case "for want of a substantial federal question." Baker v. Nelson, 409 U.S. 810 (1972).

same-sex marriage has found that doctrinal developments since 1972 provide ample reason to reach the merits." Id. (citing Kitchen v. Herbert, 961 F. Supp. 2d 1181, 1194–95 (D. Utah 2013); Bishop v. United States, 962 F. Supp. 2d 1252 (N.D. Okla. 2014); Bostic v. Rainey, 970 F. Supp. 2d 456, 468–70 (E.D. Va. 2014); McGee v. Cole, C/A No. 3:13-24068, 2014 WL 321122, at *8–10 (S.D. W. Va. Jan. 29, 2014); Bourke v. Beshear, C/A No. 3:13-cv-750-H, 2014 WL 556729 (W.D. Ky. Feb. 12, 2014); De Leon v. Perry, 975 F. Supp. 2d 632, 646–49 (W.D. Tex. 2014); DeBoer v. Snyder, 973 F. Supp. 2d 757, 773 n.6 (E.D. Mich. 2014)); see also Condon, 2014 WL 5897175.

Consistent with this trend, the Fourth Circuit in Bostic found Virginia's marriage laws "violate[d] the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the extent that they . . . prohibit Virginia from recognizing same-sex couples' lawful out-of-state marriages."  Bostic, 760 F.3d at 384.  This court cannot ignore Bostic.  United States v. Brown, 74 F. Supp. 2d 648, 652 (N.D. W. Va. 1998) ("[A] district court is bound by the precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court.").  It is also worth noting that the Supreme Court has had ample opportunity to instruct the lower courts that Baker remains "the law of the land" and that Bostic, in declining to follow Baker, was wrongly decided, and chose instead not to hear the case.  Absent such guidance from the Supreme Court, this court is bound then to follow Fourth Circuit precedent, which considers Baker no longer binding.  Bostic, 760 F.3d at 375.

Consistent with the foregoing, the court concludes that Baker is neither controlling nor does it bar review of Plaintiffs' claims.

F.      Due Process

Plaintiffs assert that South Carolina's failure to provide legal recognition to same-sex

couples married in other states or jurisdictions violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The Due Process Clause of the Fourteenth Amendment states that "No state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Due process includes both procedural and substantive components.[5] Plaintiffs' claim that South Carolina's failure to recognize their marriage deprives them of a fundamental liberty interest—without due process of law–invokes the protections afforded by the substantive component of the Due Process Clause. Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 847–48 (1992) (finding marriage "to be an aspect of liberty protected against state interference by the substantive component of the Due Process Clause").

Upon review, the court finds that Plaintiffs have articulated a constitutionally protected, fundamental liberty interest in the right to marry.[6] (ECF No. 75-1 at 20 (citing Zablocki v. Redhail, 434 U.S. 374, 384 (1978) ("[D]ecisions of this Court confirm that the right to marry is of fundamental importance for all individuals."); United States v. Kras, 409 U.S. 434, 446 (1973) (concluding the Court has come to regard marriage as fundamental); Loving v. Virginia, 388

---

[5] In order to establish a violation of procedural due process, the plaintiffs must show that: (1) they had a liberty or property interest, (2) of which the Government deprived them, (3) without due process of law. United States v. Hicks, 438 Fed. App'x 216, 218 (4th Cir. 2011) (citing Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322 (4th Cir. 2005)). Procedural due process requires, at a minimum, fair notice and an opportunity to be heard. Matthews v. Eldridge, 424 U.S. 319, 333 (1976). "Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them." Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995) (internal citations and quotation marks omitted). The residual protections of substantive due process "run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Harford Cnty., 946 F.2d 278, 281 (4th Cir. 1991).

[6] The Court in Bostic agreed with this conclusion finding the existence of a "fundamental right to marry." See Bostic, 760 F.3d at 376–77.

U.S. 1, 12 (1967) ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."); Skinner v. Okla. ex rel. Williamson, 316 U.S. 535, 541 (1942) (noting marriage is one of the basic civil rights of man fundamental to our existence and survival); Maynard v. Hill, 125 U.S. 190, 205 (1888) (characterizing marriage as "the most important relation in life" and as "the foundation of the family and society, without which there would be neither civilization nor progress.")).)

Plaintiffs further have shown how they have been deprived of the benefits of this fundamental right by the State of South Carolina's marriage laws.  (See, e.g., ECF No. 75-5 at 5 ¶ 14 ("During the 2013 open enrollment period, I attempted to add Tracie [Goodwin] as my spouse onto my State insurance . . . I completed numerous Notice of Election forms, all of which were rejected."), ¶ 15 ("On November 19, 2013, . . . I [Katherine Bradacs] received an email from my Human Resources Department advising that our children were added to our health insurance plan retroactive to their births, . . . but refusing to add Tracie [Goodwin] as my spouse."), ¶ 16 ("Tracie [Goodwin] applied for a VA loan, but due to the State of South Carolina's failure to recognize our marriage, the VA would only guaranty Tracie's interest in the property, causing me [Katherine Bradacs] to have prepared a "gift letter" for tax purposes to avoid taxation on any payments made on the mortgage."); at 6 ¶ 17 ("Tracie [Goodwin] and I [Katherine Bradacs] cannot file joint state tax returns because the State of South Carolina does not recognize our marriage resulting in our having to file separate returns and preventing us from availing ourselves of the benefits of filing as a married couple.").)

Because marriage is a fundamental right, South Carolina's marriage laws are subject to strict scrutiny and survive only if they are narrowly tailored to a compelling government interest. Carey v. Population Servs., Int'l, 431 U.S. 678, 686 (1977); accord Zablocki v. Redhail, 434 U.S.

374, 388 (1978) ("When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.").  Based on the foregoing, the court finds that South Carolina's marriage laws are not narrowly tailored to serve a compelling state interest as they impermissibly infringe on Plaintiffs' fundamental right to marry.  Therefore, after careful consideration of the parties' respective positions, the court finds that Plaintiffs have established the violation of their rights protected by the Due Process Clause of the Fourteenth Amendment and, as a result, they are entitled to summary judgment on their due process claims.

G.    Equal Protection

Plaintiffs assert that South Carolina's failure to provide legal recognition to same-sex couples married in other states or jurisdictions violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 3 of the South Carolina Constitution.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause of the South Carolina Constitution states that "[t]he privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, . . . nor shall any person be denied the equal protection of the laws."  S.C. Const. art. I, § 3.  To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination;" once this

showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–65 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation).

As with their due process claim, Plaintiffs contend that South Carolina's marriage laws are subject to strict scrutiny because they burden the fundamental right to marry.  (ECF No. 75-1 at 19.)  The court agrees.  See Bostic, 760 F.3d at 377 (finding that strict scrutiny applies because Virginia marriage laws "impede the right to marry by preventing same-sex couples from marrying and nullifying the legal import of their out-of-state marriages").   As for South Carolina's compelling state interest, Defendant asserts the same grounds as the State of Virginia in Bostic:

> (1) Virginia's federalism-based interest in maintaining control over the definition of marriage within its borders, (2) the history and tradition of opposite-sex marriage, (3) protecting the institution of marriage, (4) encouraging responsible procreation, and (5) promoting the optimal childrearing environment.

(ECF No. 78-1 at 35 ("these grounds support South Carolina's law under rational basis review") (quoting Bostic, 760 F.3d at 378).)   The Fourth Circuit in Bostic examined these exact state interests and found that they neither individually nor collectively constitute a compelling state interest.  Bostic, 760 F.3d at 377–384; see also Condon, 2014 WL 5897175, at *8.  Therefore, similar to the conclusion reached in its due process analysis, the court must find that Plaintiffs have established the violation of their rights protected by the Equal Protection Clause of the Fourteenth Amendment and, as a result, they are entitled to summary judgment on their equal protection claims.

H.     Permanent Injunction

In their Verified Complaint for Declaratory, Injunctive, and Other Relief, Plaintiffs

request a preliminary and permanent injunction against Defendant and others enforcing the application of unconstitutional marriage laws and directing the State of South Carolina to recognize Plaintiffs' marriage and those marriages validly entered into by other same-sex couples outside of the State of South Carolina. (ECF No. 41.) Since this order addresses the merits of Plaintiffs' claims, the court must determine whether Plaintiffs are entitled to a permanent injunction.

> A plaintiff seeking a permanent injunction must demonstrate:
>
> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). This four-factor test should be applied by the court in the exercise of its equitable discretion on a case-by-case basis, without strict reliance on any bright-line rule. Id. at 395–96.

In this case, the court finds and concludes that (1) S.C. Constitution art. XVII, § 15, S.C. Code Ann. § 20-1-15 (1976), and/or any other state law or policy to the extent they prohibit the recognition of valid marriages of same-sex couples entered into in other states or jurisdictions and that otherwise meet the prerequisites for marriage in the State of South Carolina, except that they are of the same sex, impermissibly violate Plaintiffs' fundamental right to have their marriage recognized, and further that Plaintiffs have presented other evidence of their irreparable injuries, including the denial of significant benefits allowed for married opposite-sex couples; (2) Plaintiffs suffered, and will continue to suffer, irreparable harm in the form of violations of their constitutional rights unless the injunction is issued, and such injuries cannot be remedied solely by monetary damages; (3) the balance of equities tips strongly in favor of Plaintiffs as their actual and threatened injuries outweigh any alleged harm that the injunction may cause

Defendant; and (4) the public interest will not be adversely affected by the injunction because the court has a duty to preserve the constitutional rights of every person and to ensure that public officials discharge their duties in accordance with the United States Constitution.

Having found that S.C. Constitution art. XVII, § 15 and S.C. Code Ann. § 20-1-15, both facially and as applied to Plaintiffs, violate the Fourteenth Amendment's Equal Protection and Due Process Clauses, the court hereby issues the following permanent injunction and enjoins Defendant Alan M. Wilson, in his official capacity as Attorney General, his officers, agents, servants, employees, or any person or entity acting on his behalf or in concert with him from:

1.    Enforcing or applying S.C. Constitution art. XVII, § 15, S.C. Code Ann. § 20-1-15, and/or any other state law or policy to the extent they prohibit the recognition of valid marriages of same-sex couples entered into in other states or jurisdictions and otherwise meet the prerequisites for marriage in the State of South Carolina, except that they are of the same sex;

2.    Enforcing or applying S.C. Constitution art. XVII, § 15, S.C. Code Ann. § 20-1-15, and/or any other state law or policy to the extent they deny equal treatment of persons engaged in same-sex marriages to persons engaged in opposite-sex marriages that are validly entered into in other states or jurisdictions; and

3.    Refusing to recognize valid marriages of same-sex couples entered into in other states or jurisdictions that meet the prerequisites for marriage in the State of South Carolina, except that they are of the same sex.

Additionally, Defendant Alan M. Wilson, in his official capacity as Attorney General, his officers, agents, servants, employees, or any person or entity acting on his behalf or in concert with him are **PERMANENTLY ENJOINED** from enforcing or applying any other state or local law, rule, regulation, ordinance, or policy as the basis to deny the recognition of marriages

of same-sex couples who are otherwise qualified to marry in the State of South Carolina, except they are of the same sex, or to deny these married same-sex couples any of the rights, benefits, privileges, obligations, responsibilities, and immunities that accompany marriage for opposite-sex couples in South Carolina.  Defendant is ordered to direct all persons and entities under his control or guidance to comply with the court's order.

## IV.    CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** the Motion by Plaintiffs Katherine Bradacs and Tracie Goodwin for Summary Judgment.  (ECF No. 75.)  The court **GRANTS** the Motion for Summary Judgment as to Plaintiffs' claims that South Carolina's denial of legal recognition to the marriages of same-sex couples who were married in other states or jurisdictions violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.  The court **DENIES** the Motion for Summary Judgment as to Plaintiffs' claim asserting that South Carolina's denial of legal recognition to the marriages of same-sex couples who were married in other states or jurisdictions violates the Full Faith and Credit Clause of the United States Constitution.

The court **DIRECTS** the Clerk of Court to enter judgment in favor of Plaintiffs and against Defendant Alan M. Wilson, in his official capacity as Attorney General of the State of South Carolina.

**IT IS SO ORDERED**.


J. Michelle Childs
United States District Judge

November 18, 2014
Columbia, South Carolina