IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Katherine Bradacs and Tracie Goodwin, ) | |
| ) | Civil Action No. 3:13-cv-02351-JMC |
| Plaintiffs, ) | |
| v. ) | |
| ) | **PLAINTIFFS' PETITION FOR** |
| Nimrata ("Nikki") Randwaha Haley, in ) | **ATTORNEYS' FEES AND COSTS AND** |
| her official capacity as Governor of South ) | **MEMORANDUM IN SUPPORT** |
| Carolina; Alan M. Wilson, in his official ) | |
| capacity as Attorney General, ) | |
| ) | |
| Defendants. ) | |

Plaintiffs Katherine Bradacs and Tracie Goodwin petition the Court to award them attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and Fed.R.Civ.P. 54(d). As set forth in this Memorandum, the supporting materials, and the record in this case, Plaintiffs seek a total of $91,627.36 in attorneys' fees, costs and expenses.

## I. Introduction

On November 10, 2014, the Court entered an order denying the Defendants' Motion for Judgment on the Pleadings. (Dkt. 89). On November 18, 2014, the Court entered a subsequent order granting the Plaintiffs' Motion for Summary Judgment. (Dkt. 97). Defendants subsequently appealed and, following the U.S. Supreme Court's decision in *Obergefell v. Hodges*, __ U.S. ___, 135 S. Ct. 2584 (2015), the Defendants dismissed their appeal and on July 21, 2015, the Fourth Circuit Court of Appeals issued its mandate dismissing the appeal and remanding the matter to this Court. *Bradacs v. Haley*, 3:13-cv-02351 (4th Cir. Text Order July 21, 2015) (Dkt. 110). This Court then issued an order sua sponte lifting a previous stay and directed Plaintiffs to file their Motion for Attorney's Fees by August 4, 2015. *Bradacs v. Haley*, 3:13-cv-02351

(D.S.C. Text Order July 21, 2015) (Dkt. 111).

Pursuant to 42 U.S.C. § 1988, Local Civil Rules 54.02 through 54.03, DSC, and Fed.R.Civ. P. 54(d), Plaintiffs now move for an award of attorney fees, costs, and interests in the following amounts:

| | |
|---|---|
| Attorney Fees: | $ 87,760.00 |
| Paralegal Fees: | $   3,193.75 |
| Litigation Costs and Expenses: | $    $673.61 |
| Total: | $ 91,627.36 |

## II. Analysis

**A.     Plaintiffs are the Prevailing Parties**

Plaintiffs pursued this case pursuant to 42 U.S.C. § 1983 ("Section 1983"). Section 1988 of the Civil Rights Code provides: "In any action or proceeding to enforce a provision of section[] 1983 . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. ¶1988(b). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

> The purpose of awarding fees is to encourage attorneys to prosecute cases that vindicate the objectives of [the civil rights acts] though they might be economically unattractive under a contingency fee arrangement. *See Daly v. Hill*, 790 F.2d 1071, 1076-77 (4th Cir.1986) (analyzing 42 U.S.C. § 1988).... Fees should be high enough to encourage attorneys to take cases without awarding windfalls. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 (4th Cir.1995).

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 652 (4th Cir. 2002).

"[T]he prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 1

(1989)(quoting *Newman v. Piggie Park Enterprises, Inc.*, 390U.S. 400, 402 (1968) and citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 (4th Cir. 1995)(citing *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 174 (4th Cir.1994)).

Plaintiffs are the "prevailing party" in this litigation. *Hensley*, 461 U.S. at 433 (parties are "'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."). "A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiffs." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit." *Id.* at 112-13; *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (citation omitted); *Buckhannon Bd. & Care Home, Inc.v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 603 (2001) (adopting the Black's Law Dictionary definition of "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded."), cited and quoted in *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 653 (4th Cir.2002).

Accordingly, the only remaining issue is what is reasonable in terms of awarding fees, costs, and expenses.

**B.     Determination of a Reasonable Fee**

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v.*

*Equifax Info. Services, LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir.2008)). "[T]he lodestar method yields a fee that is presumptively sufficient" with adjustments, as necessary, in "exceptional" circumstances. *Perdue*, 130 S. Ct. at 1673.

In determining the lodestar "reasonable hours" and a "reasonable rate," both Fourth Circuit precedent and South Carolina's local civil rules mandate that fees be awarded in conjunction with the twelve-factor test of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) (adopting factors in *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). *Robinson*, 560 F.3d at 243 (citations omitted); Local Civil Rule 54.02(A), DSC.

The lodestar figure, determined by multiplying reasonable hourly rates by the reasonable number of hours involved, is generally considered to be the proper starting point for determining a statutory award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The"reasonableness" of the lodestar figure is then tested against the following twelve factors from *Barber*:

> (1) the time and labor expended;(2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained;(9) the expertise, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fee awards in similar cases.

*Uhlig, LLC v. Shirley*, 895 F.Supp.2d 707 (D.S.C. 2012) (Child, J).

The purpose of these factors is to help "determin[e] the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a

reasonable fee." *EEOC v. Service News Co.*, 898 F.2d 958, 964 (4th Cir. 1990) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1984)).[1] The court may find that some of the factors are inapplicable; as such, these factors need not be strictly applied. *Uhlig, LLC v. Shirley*.

### (1)     Time and Labor Expended

The *Johnson* Court explained this factor as follows:

> Although hours claimed or spent on a case should not be the sole basis for determining a fee, *Electronics Capital Corp. v. Sheperd*, 439 F.2d 692 (5th Cir. 1971), they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities.

*Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974); *accord Riverside v. Rivera*, 477 U.S. 561 (1986).

The number of hours spent is not limited to post-complaint and pre-trial time, but also includes time spent prior to litigation, *Mammano v. Pittston Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986) (citing *New York Gaslight Club, Inc. v. Carey*, 447 U.S.54 (1980)), in post-trial motions, *Jardien v. Winston Network*, 888 F.2d 1151 (7th Cir.1989), conferences with the client, *Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir. 1986), and other aspects of the representation through and including the preparation of the instant fee petition, *see Mercer v. Duke University*, 401 F.3d 199, 202 n. 3 (4th Cir.1999) ("[I]t is well settled that the time spent defending entitlement to

---

[1] The Supreme Court has made clear that the *Johnson* factors (adopted in *Barber*) determine the plaintiff's entitlement to attorney fees regardless of the agreement between plaintiff and her counsel. *Blanchard v. Bergeron*, 489 U.S. 87 (1989) (contingency fee agreement does not serve as a cap to award of attorney fees); *Blum v. Stenson*, 465 U.S. 886, 894 (1984) (no reduction for fact that plaintiff represented by legal services agency). Furthermore, the Fourth Circuit has advised that any award of attorney fees "must be accompanied by detailed findings of fact with regard to the factors." *Alexander S. v. Boyd*, 113 F.3d 1373, 1391 (4th Cir. 1997) (*citing Barber*, 577 F.2d at 226).

attorney's fees is properly compensable under § 1988.") (quoting *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir.1995))); *see*, *e.g.*, *Summers v. Adams*, 3:08-2265-CMC, 2010 WL2179571 * 3 (D.S.C. May 26, 2010) (awarding almost 78 hours for preparation of fee petition); *Hymes v. Harnett County Board of Education*, 664 F.2d 410, 413 (4th Cir.1981).

In this case, three lawyers worked in tandem in representing the Plaintiffs and each took on different roles. Carrie Warner and John Nichols acting as primary litigation counsel, while Laura Morgan of Virginia (whom this Court admitted *pro hac vice* (Dkt. 27)), assisted both Mr. Nichols and Ms. Warner with legal research, drafting and editing documents that Plaintiffs ultimately filed with the Court. The time and labor necessarily expended by each lawyer is reflected in attached affidavits and is summarized as follows:

    John Nichols - 134.30 hours attorney time; 10.50 hours paralegal time

    Carrie Warner - 74.85 hours attorney time; 12.25 hours paralegal time

    Laura Morgan - 56 hours attorney time, no paralegal time

This time was imminently reasonable and necessary in this case. The lawyers included no time for preparing this fee petition.

### (2)     Novelty and Difficulty of the Questions Raised

This case presented several difficult legal questions related to a challenge on federal constitutional grounds to South Carolina's statutory and state constitutional bans on the recognition of Plaintiffs' valid 2012 marriage from the District of Columbia. At the time Plaintiffs filed their action on August 28, 2013, the *only* relevant decision regarding the Defense of Marriage Act ("DOMA") was *U.S. v. Windsor*, — U.S. —, 133 S. Ct. 2675 (2013) (filed June

26, 2013).

Most of the federal District Court decisions were published *after* Plaintiffs filed their case, and *every* favorable Circuit Court of Appeals decision followed Plaintiffs' filing. *Compare Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) (filed June 25, 2014); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) (filed July 28, 2014); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014) (filed September 4, 2014); *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) (filed October 7, 2014); *Latta v. Otter*, 771 F.3d 496 (9th Cir. 2014) (filed October 15, 2014).

The novelty and difficulty of the issues is evidenced by the extensive briefing both sides did in this matter. Defendants filed a 45-page memorandum in support of their Motion for Judgment on the Pleadings with several attached exhibits. Plaintiffs' response to the Defendants' Motion for Judgment on the Pleadings was 40 pages long. Defendants then filed a 15-page memorandum in reply.

Plaintiffs filed a 35-page Motion for Summary Judgment together with numerous and extensive attachments. Defendants filed a 7-page response and separately filed a 6-page memorandum requesting a stay as an alternative if the Court granted the Plaintiffs' Motion for Summary Judgment. Plaintiffs responded with an 8-page memorandum in Reply.

A brief of *amicus curiae* was filed by the Lawyers' Committee for Children's Rights. The *amicus* attached nearly 100 pages of exhibits.

The volume and content of the extensive filings demonstrates the difficulty of the issues in this case. And although the United States Supreme Court denied review in the prior appellate decisions on October 6, 2014, at the time Plaintiffs brought their case in August 2013, the issues were truly novel. Furthermore, once the Sixth Circuit Court of Appeals upheld the bans in the

case underlying *Obergefell*, see *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), the State of South Carolina continued to challenge this Court's rulings, thereby prolonging the case and placing the results obtained from this Court in further jeopardy pending the ultimate decision in *Obergefell*.

### (3)     Skill Required to Properly Perform the Legal Services Rendered

The *Johnson* Court advised that:

> The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration.

*Johnson*, 488 F.2d at 718. This factor appears to be one for the Court's sole determination based on its review of the quality of counsels' work product and performance in this case. Counsels' work product apparently met the Court's expectation as the Court adopted most of the arguments made by Plaintiffs in opposition to the Defendants' Motion for Judgment on the Pleadings and in support of the Plaintiffs' Motion for Summary Judgment.

### (4)     Attorneys' Opportunity Costs in Pressing the Instant Litigation

Except as to time, this is not a significant factor in the attorney fee award. The *Johnson* Court explained this factor as follows:

> This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes.

*Johnson*, 488 F.2d at 718. An award of compensation for time spent will rectify the lost amounts

Plaintiffs' counsel could have earned working for other clients, including work on fee-paying clients and consultations for which fees are charged. The time devoted to this case further required that less attention be paid to contingency cases, delaying the point in time at which a recovery is likely. The novelty of the issues mandated that counsel place this case in a position of priority and necessarily took time counsel could have used on other files.

### (5)     Customary Fee for Like Work

The determination of a market rate is an important factor in finding a reasonable hourly rate. *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir.2010) (citing and quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir.1990)). "The fact Plaintiff seeks actual billing rates used for all clients strongly favors a finding the rates *per se* reasonable." *Miller v. HSBC Fin. Corp.*, 3:08-CV-01942-MJP, 2010 WL 2722689 * 2 (D.S.C. July 9, 2010) (citing *Liberty Mutual Insurance Company v. Employee Resource Management, Inc.*, 176 F. Supp.2d 510 (D.S.C.2001)).

John Nichols seeks an hourly rate of $375, Carrie Warner seeks an hourly rate of $325, and Laura Morgan seeks an hourly rate of $200.

The Affidavits of Brian Murphy, Esq. and David Rothstein, Esq., attached as exhibits, further establish that the rate sought is within the market rate in this District in 2014. The rate also is consistent with other awards in this District. Compare *Savani v. URS Professional Solutions, LLC*, 1:06-cv-02805-JMC (D.S.C. Jan. 15, 2014) (awarding fee of about $400 per hour to class counsel in complex litigation); *Unifund CCR Partners v. Wallis*, No. Civ.A. 06-CV-545-GRA, Civ.A. 06-CV-546-GRA, Civ.A. 06-CV-547-GRA (D.S.C. April 7, 2006)

(approving a fee of $500 per hour in remand order involving counterclaims in debt collection case).

The details of the time spent by each counsel are set forth in attached Exhibits. Plaintiff also requests a modest amount for paralegal time. *Herold v.Hajoca Corp.*, 864 F.2d 317, 322 (4th Cir. 1988) (holding attorney fees includes paralegal time) (citing *Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496, 1510 (4th Cir.1988)). This time also is itemized in attached Exhibits.

**(6)     Attorney's Expectations at the Outset of the Litigation**

The results obtained are within the range of outcomes that could have been anticipated at the outset of this case. Plaintiffs sought a declaration that South Carolina's constitutional and statutory bans on same-sex marriage violated their federal constitutional rights and were not enforceable. This Court's orders of November 10, 2014 and November 12, 2014, ruled to that effect and granted Plaintiffs the relief they sought, including injunctive relief against enforcement of the State law bans. These rulings were in accord by the Supreme Court's ultimate decision in *Obergefell*.

**(7)     Time Limitations Imposed by the Client or Circumstances**

The very nature of this case for a plaintiff's attorney requires long and intense hours, great risk of non-payment, or, at best, very late payment.[2] The circumstances of this case support the hourly rate requested, if not more. The complexity of the issues and the diligence with which the

---

[2] "Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718.

Attorney General pursued all available defenses required counsel to invest a great amount of time and resources to this case. Plaintiffs were unable to pay for any of the necessary expenses in this case, and although relatively modest, the undersigned has advanced all sums sought as litigation expenses.

**(8)     Amount in Controversy and the Results Obtained**

In the Fourth Circuit, "[t]he most critical factor in calculating a reasonable fee award is the degree of success." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir.1998) (citing *Hensley*, 461 U.S. at 436); *Farrar*, 506 U.S. at 114-15. The fact that Plaintiffs did not prevail on all counts does not permit for a reduction in any fees. The *Hensley* Court explicitly rejected the notion that a court may calculate an award of attorneys' fees by means of a purely mathematical comparison between the number of claims pressed and the number prevailed upon, observing that "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hensley*, 461 U.S. at 435 n. 11. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435. "The appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not." *See id.*

In this matter, although the Court granted that portion of the Defendants' motion so as to dismiss Governor Haley from the case under Eleventh Amendment immunity, the Court denied Defendants' attempt to have Attorney General Wilson removed on that same basis and thereby end the litigation. The Court also agreed with Plaintiffs that they had standing to bring the matter. The Court denied all other aspects of Defendants' motion for judgment.

As to Plaintiffs' Motion for Summary Judgment, the Court agreed with Defendants that the Full Faith and Credit Clause did not require South Carolina to recognize Plaintiffs' marriage under Section 2 of DOMA. However, the Court agreed with Plaintiffs on every other point they raised and granted Plaintiffs all of the relief they sought, describing its ruling on the Full Faith and Credit Clause as, therefore, "meaningless." (Dkt. 97, p. 17).

In this case, there were no unrelated, discrete issues that would justify a reduction in the hours counsel requests – all of which were necessary to present the case regardless of the claims raised. Further, Plaintiffs received the best result they could obtain in this case, which was a declaration that the State constitutional and statutory provisions that interfered with the validity of Plaintiffs' marriage were unconstitutional.

**(9)     Experience, Reputation and Ability of the Attorney**

The *Johnson* Court explained this factor as follows:

> An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience. Longevity *per se*, however, should not dictate the higher fee. If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar.

488 F.2d at 718-19.

Plaintiffs' counsel John Nichols is a 1985 graduate of the University of South Carolina School of Law. He was employed from 1986 to 1996 by the South Carolina Court of Appeals as a staff attorney and served three of those years as the Court's chief staff attorney. He also served at times as a judicial law clerk for Chief Judge Alex M. Sanders, Associate Judge Randall T. Bell and Acting Associate Judge C. Bruce Littlejohn. He has served on the South Carolina Board of

Law Examiners since 2003 and has been a member of the Commission for Indigent Defense since 2012. He is listed in both Super Lawyers and Leadership in Law, and was named 2013 Lawyer of the Year by Lawyers Weekly. He maintains an AV rating from Martindale Hubbell. He is admitted to the US Supreme Court bar as well as the Federal Courts of Appeals for the Fourth Circuit, the Eleventh Circuit, the Federal Circuit, and the Court of Appeals for Veterans Claims. He has tried or appeared in numerous cases in state and federal court in South Carolina and in other states, including a successful federal race discrimination case before this Court in 2011. He has authored or co-authored several legal publications and has spoken at numerous CLE seminars for various organizations on a wide range of topics. Support for the request for his fees is provided through the affidavits of David Rothstein, Esquire, and Brian Murphy, Esquire.

Plaintiffs' counsel Carrie Warner graduated *magna cum laud* from the University of South Carolina in 2000 with a BS in Criminal Justice and is a member of Phi Beta Kappa. She received her law degree from the University of South Carolina School of Law in 2004 and is admitted to practice before the South Carolina Bar, the District Court of South Carolina, the Fourth Circuit Court of Appeals and the United States Supreme Court. Ms. Warner clerked at the Department of Justice and the Richland County Solicitor's Office before becoming a partner with Warner, Payne & Black, LLP, in 2007. In 2015 she formed a solo practice. Ms. Warner focuses primarily on family law, probate law, civil litigation, and appellate practice and has prepared and tried dozens of cases in the South Carolina Family Court and the Circuit Court of South Carolina. Ms. Warner is a member of the American Bar Association (Family Law Section and Sports and Entertainment Law Forum), the Richland County Bar Association (Sports Lawyers Association), and the Lexington County Bar Association. She is a graduate of the American Bar Association's

National Institute for Trial Advocacy, Family Law Section, and has presented at a number of CLE seminars, including a presentation on "Representing Gay, Lesbian, Transgender Clients In Your Practice" at the "Modern Family" CLE sponsored by the South Carolina Bar on March 14, 2014.

Finally, Plaintiffs' counsel Laura Morgan has been a member of the Massachusetts Bar since December 1983 and a member of the Virginia Bar since September 1989. She is also admitted to practice before the United States District Court for the District of Massachusetts and the United States Court of Appeals for the First Circuit. This Court admitted her *pro hac vice* for this case in November 2013. (Dkt. 28). Her *curriculum vitae* accompanied her application for *pro hac* admission. (Dkt. 27). Ms. Morgan practiced law in Boston, Massachusetts from 1983 to 1988. In 1989 she was employed by National Legal Research Group of Charlottesville, Virginia until 2001, when she established Family Law Consulting doing research and writing briefs for family law attorneys across the country. Ms. Morgan is recognized as a national authority in family law, having written a number of treatises in family law and dozens of law review articles. She is active in the Family Law Section of the American Bar Association, and has chaired of several ABA committees. Ms. Morgan is active in the American Academy of Matrimonial Lawyers and is a member of the Board of Editors of the Journal of the AAML. She has presented at over 100 CLE seminars across the country. Ms. Morgan also teaches the Family Law course at the School of the Judge Advocate General in Charlottesville, Virginia.

**(10)     Undesirability of the Case within the Legal Community in Which the Suit Arose**

The risk of non-payment – which was a very real risk in this case – makes this type of statutory and constitutional challenge undesirable. Although the US Supreme Court issued an instructive and favorable ruling in *Windsor* in June 2013, *no* other cases asserting similar issues and challenges were brought in this District until mid-October 2014, when *Bleckley v. Wilson*, 2:14-cv-04010-RMG was filed. Unlike the case *sub judice*, the *Bleckley* case was thus brought after dozens of district and several federal appellate courts around the Country had already ruled unanimously and favorably on the issues involved, and after the US Supreme Court denied review of several appellate decisions, including *Bostic v. Schaefer*, on October 6, 2014. In total, three other cases raising the same constitutional challenges were filed in this District in late 2014, one of which was assigned to District Judge Richard M. Gergel (*Bleckley*) and the remainder that were assigned to this Court. Again, all of these other cases in this District were filed under the safety and security of numerous favorable decisions around the Country.

These facts demonstrate the dearth of lawyers willing to risk representing plaintiffs in challenging South Carolina's constitutional and statutory bans on same-sex marriage prior to the favorable decisions around the country. This was particularly true in August 2013 when the Plaintiffs brought their case. Once the U.S. Supreme Court signaled its view with the denials of certiorari on October 6, 2014, other litigants felt safe enough to pursue litigation. This was, of course, 14 months after Plaintiffs filed their case in South Carolina.

In sum, bringing a "same-sex" marriage case in South Carolina was notably undesirable in South Carolina's legal community in 2013 when Plaintiffs' counsel brought this case.

**(11)     Nature and Length of the Professional Relationship Between Attorney and Client**

All counsel were retained by Plaintiffs in July 2013. The lawyers worked with the Plaintiffs for about 18 months prior to the appeal of this Court's orders. They continue to counsel the clients, but have not asserted a claim for fees for any time after the appeals were filed and subsequently held in abeyance by the Fourth Circuit.

**(12)     Attorneys' Fees Awards in Similar Cases**

The fee requested in this matter is relatively small compared to many of the reported decisions. This is due, in large part, to the level of cooperation engaged in by all counsel and the absence of wasteful or frivolous motions or other unnecessary filings.

**C.     Costs and Litigation Expenses as Part of the Attorney Fees**

An important part of attorney fees under Section 1988 is the reimbursement of litigation expenses and costs. The Fourth Circuit has held that, "[w]here attorneys' fees are expressly authorized by statute ... Rule 54(d) is no longer relevant. Instead, the question is whether the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses." *Wheeler v. Durham Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir.1978)[, *cert denied*, 490 U.S.1107 (1989)]. "A prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852F.2d 762, 771 (4th Cir.1988) (internal quotation marks and citation omitted). Section 1988 permits recovery of expenses that are not compensable under Rule 54(e) because the statute "is intended to encourage [meritorious civil rights plaintiffs] to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers." *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir.1986); see

also *Wheeler*, 585 F.2d at 624 ("Reimbursement of related litigation expenses would ... plainly further the congressional purpose ...."). *Summers v. Adams*, CA3:08-2265-CMC, 2010 WL 2179571 * 4 (D.S.C. May 26,2010); *see also Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (citing *Wheeler*).

Plaintiff seeks $673.61 for costs and expenses as detailed in Exhibits entitled "Fees and Costs".

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court amend the Judgment to add $91,627.36 in fees, costs, and expenses.

### Verification Under 28 U.S.C. § 1746

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 4, 2015.

> For the Plaintiffs:
> /s/ John S. Nichols
> John S. Nichols
> Fed. I.D. No. 2535
> BLUESTEIN, NICHOLS, THOMPSON & DELGADO, LLC
> Post Office Box 7965
> Columbia, South Carolina 29202
> Telephone: (803) 779-7599
> Facsimile: (803) 771-8097
>
> ATTORNEY FOR PLAINTIFFS